UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| R<small>AJIV</small> P<small>ANDEY</small>, <br>     *Plaintiff*, <br> <br>     *vs*. <br> <br> S<small>T</small>. F<small>RANCIS</small> H<small>OSPITAL</small>, <br>     *Defendant*. | ) <br> ) <br> ) <br> )     1:09-cv-1565-JMS-DML <br> ) <br> ) <br> ) <br> ) |

## **ORDER**

Rajiv Pandey, a respiratory therapist of Indian descent, alleges that his former employer, St. Francis Hospital & Health Centers, Inc. ("the Hospital"), discriminated against him and harassed him on the basis of his race/nationality, and retaliated against him for allegedly engaging in statutorily protected conduct under Title VII of the Civil Rights Act of 1964.  Presently before the Court is the Hospital's Motion for Summary Judgment.  [Dkt. 35.]

## **I.**
### S<small>TANDARD OF</small> R<small>EVIEW ON</small> S<small>UMMARY</small> J<small>UDGMENT</small>

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence would—as a matter of law—conclude in the moving party's favor and is thus unnecessary.  *See* Fed. R. Civ. Pro. 56(c).  When evaluating a motion for summary judgment, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). Nevertheless, "the Court's favor toward the non-moving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010).  The non-moving party must set forth specific facts showing that there is a

material issue for trial and cannot rely upon the mere allegations or denials in the pleadings. Fed. R. Civ. Pro. 56(e); *Celotex*, 477 U.S. at 317. The key inquiry is the existence of evidence to support a plaintiff's claims, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).

When a motion for summary judgment is made and supported as provided in Rule 56, the nonmoving party may not rest upon the mere allegations or denials of his pleading; rather, his response must set forth specific facts—"conclusory and unresponsive denial[s] made by [a] plaintiff[] do not serve to raise a genuine issue as to a material fact." *Heck v. Rodgers*, 457 F.2d 303, 307 (7th Cir. 1972).

## II.
### FACTUAL BACKGROUND

In opposing the Hospital's motion for summary judgment, Mr. Pandey failed to comply with Local Rule 56.1. Instead of including a section in his response brief labelled, "Statement of Material Facts in Dispute," he simply makes wholesale denials or conclusory allegations by reference to various sections of the Hospital's statement of material facts. [*See, e.g.,* dkt. 41-1 at 5.] Where the non-moving party fails to provide a factual statement, "the Court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy." *See* Patterson v. Indiana Newspapers, Inc., 589 F.3d 357 (7th Cir. 2009) ("Where a party has failed to comply with Local Rule 56.1(e), the Court will accept the moving party's factual assertions, at least to the extent that there is not otherwise a showing that those assertions lack supportive evidence.") Where there is evidence in the record, it will of course be construed in the light most favorable to Mr. Pandey.

Rajiv Pandey emigrated from India in 1990 and became a United States citizen in 2000. In 2004, Mr. Pandey was hired for a respiratory therapist position at the Hospital's Beech Grove campus by Connie Little, the Hospital's Manager/Director of Respiratory Care Services. [Dkt. 39-1 at 8.] Mr. Pandey generally worked 24 hours per week at the Hospital, [*id*. at 7], and was responsible for performing respiratory treatments on a particular floor or in the critical/intensive care units, [*id*. at 10]. He was often scheduled to work on 8-Tower, one of the busier floors in the Hospital, comprised of general respiratory care patients who require treatments every four hours. [*Id.* at 17.]

In November 2006, Mr. Pandey filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that the Hospital, through his supervisor, Mary Roth, subjected him to discrimination based on his national origin, and asserting a claim for retaliation. [Dkt. 1-1 at 2.] The matter was resolved while pending in the EEOC. [*Id*.] That month, Mr. Pandey began reporting to Rob Skirvin, a Respiratory Therapist Supervisor, to whom he continued reporting until the termination of his employment. [Dkt. 37-1 at 11.] Mr. Pandey had a good working relationship with Mr. Skirvin and with the other people with whom he worked. [*Id.*]

In late 2007, Mr. Pandey was accused of improper patient care several times, but each accusation was unsubstantiated. [Dkt. 1-1 at 2.]

In April and June 2008, Mr. Skirvin advised Mr. Pandey not to use certain locker rooms or break rooms. [Dkt. 37-1 at 26.] The Hospital encouraged all of its respiratory therapists to use the break rooms or locker rooms on the floors where they were treating patients. [Dkt. 37-2 at ¶ 23.] Mr. Pandey was also told not to use the locker room when the women were changing into their scrubs. [Dkt. 37-1 at 27-28.]

On July 31 and August 1, 2008, Ms. Little received three incident reports regarding Mr. Pandey, all of which were prepared by Ray Kahn. [Dkt. 37-2 at 9-11.] The first report indicated that there were no ventilator orders in the chart of a patient for whom Mr. Pandey was providing treatment. [*Id.*] In the second, Ms. Kahn reported that Mr. Pandey left his shift without properly addressing a patient in need of support and failed to notify the nurse on duty, which caused the patient to go into respiratory distress. [*Id.*] The third report indicated that he reported treating a patient in that patient's medical records when, in fact, he had not completed the treatment. [*Id.*] Each of these incidents was in violation of the Hospital's policies and procedures. [*Id.* at 3-4.]

On August 6, 2008, Mr. Pandey met with Peter Paskins, the Hospital's Education Coordinator, as well as Mr. Skirvin, to discuss his unsatisfactory work performance. [Dkt. 37-1 at 50-51.] After addressing the deficiencies documented in the three incident reports, Mr. Paskins conveyed clinical concerns and concerns with patient care safety. [Dkt. 39-4 at ¶ 4.] Mr. Paskins offered Mr. Pandey a structured clinical reinstruction/orientation. [*Id.*] Mr. Pandey was not opposed to participating in the remediation training. [*Id.* at 51-52.]

During the remediation training, Mr. Pandey's supervisors identified and addressed several performance deficiencies—difficulties administering the Hospital's bronchodilator protocol, lack of awareness of other disciplines or people in the patient's room during treatment, weak ability to perform medical administration records process scanning, and failure to fully assess patients before completing their treatment. [Dkt. 39-4 at ¶ 6].

After the training, the Hospital determined that Mr. Pandey had become more comfortable in the areas of general and critical patient care. [*Id.* at ¶ 8.] It also determined—before and after Mr. Pandey's remediation training—that his skill-set was best suited to treating general care respiratory patients. [Dkt. 37-2 at ¶ 3; dkt. 39-4 at ¶8.]

In October 2008, after he had completed the training, Mr. Pandey received a written warning for not following the Hospital's oxygen therapy administration and humidity policies/practices. [Dkt. 37-1 at 54-55.] The letter stated that he did not follow the nurse's request to assess the patient's respiratory needs and warned that further infraction would result in suspension until investigation and possible termination." [Dkt. 37-2 at ¶ 14, pg. 13.]

In January 2009, a patient complained that Mr. Pandey removed his breathing treatment apparatus before the treatment was completed, which was in direct contravention of a physician's order. [*Id.* at ¶ 17, pg. 15]. He then left the breathing treatment equipment in the patient's bed and left the patient alone. [*Id.* at ¶¶ 17-18, pg. 15]. The patient asked that Mr. Pandey never treat him again. [*Id*. at ¶ 18]. At the time, it was—and still is—against the Hospital's policy and accepted practice (Policy number 3-14.05) to stop the medication delivery before completion and to leave a nebulizer in the patient's bed. [Dkt. 36 at 9.]

Several days later, Mr. Pandey was fired—Ms. Little made the determination. [Dkt. 37-2 at ¶ 19-20].

Throughout his employment at the Hospital, Mr. Pandey believes he was discriminated against and harassed. [Dkt. 1-1 at 3.] Specifically, Mr. Pandey stated to human resources on several occasions that he believed his workload was heavier than that of other employees—so-called "friends of management." [*Id*. at ¶ 12; dkt. 1-1 at 3.] In response to Mr. Pandey's concerns, Ms. Little reviewed the 2006-2008 Respiratory Assignment sheets and noted that Mr. Pandey had a relatively light workload, which was typically within the normal workload range of 37-42 relative value units (a measure of work performed by respiratory therapists). [Dkt. 43-1 at ¶¶ 3, 9-10.] In addition to his concern about workload, Mr. Pandey believes that at an unspecified time, some of his patient charting had been erased. [Dkt. 37-1 at 34-35.] Also at unspeci-

fied times, Mr. Pandey claims that certain employees—specifically, Ms. Sjrredt, Mr. Donner, and Mr. Xhymouth, an evening supervisor—followed him throughout his tenure at the Hospital. [*Id.* at 40-41.] When Mr. Pandey lodged complaints to James Dix in human resources, the employees would stop following him for a few months, but then it would continue. [*Id.*] Additionally, Mr. Pandey alleges that someone (whose identity he does not know) left a derogatory note in his locker. [Dkt. 41-1 at 5.]

On November 23, 2009, Plaintiff filed suit in the Marion Superior Court alleging race discrimination (Count I) and retaliation (Count II). [Dkt. 1-1 at 4-5.] Specifically, his complaint alleges that the Hospital "gave him heavier workloads and subjected him to harassment from supervisors . . . , falsely accused him of poor patient care, ha[d] employees follow him, forb[ade] him from using certain lockers and break-rooms when no such restrictions were placed upon other employees, falsely accus[ed] him of poor performance, forced him to take remediation training, and subsequently fired him." [*Id.*]

On December 18, 2009, the Hospital removed this case to this Court. [Dkt. 1-1.] The Hospital now seeks summary judgment on both counts of Mr. Pandey's complaint. [Dkt. 35.]

### III.

#### DISCUSSION

Title VII of the Civil Rights Act of 1964 forbids an employer from discriminating against an employee based upon race and from retaliating against an employee who opposes an unlawful employment practice. 42 U.S.C. §§ 2000(e)(2) *et seq*. Mr. Pandey claims that the Hospital dis-

criminated against him, and harassed him,[1] and retaliated against him in violation of Title VII. [Dkt. 1-1.]

### A) Mr. Pandey's Race/National Origin Discrimination and Retaliation Claims

Mr. Pandey can attempt to prove race or national origin discrimination or retaliation directly or indirectly. To prove either claim directly, Mr. Pandey must show that discriminatory conduct was related directly to the employment decision in question. *Hemsworth v. Quotesmith.com, Inc.,* 476 F.3d 487, 491 (7th Cir. 2007). Here, Mr. Pandey presents no direct evidence of race discrimination or retaliation, nor does he contend otherwise. Moreover, he relies on the same alleged conduct to prove both discrimination and retaliation. [Dkt. 1-1 at 3-4.] Therefore, he must prove his race discrimination and retaliation claims using the indirect method. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002).

To establish a prima facie case of race discrimination using the indirect method, an employee must demonstrate: (1) he belongs to a protected class; (2) his performance met his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) similarly-situated employees not in his protected class received more favorable treatment. *See Antonetti v. Abbott Laboratories*, 563 F.3d 587, 591 (7th Cir. 2009) (addressing race and nationality discrimination claims simultaneously); *Williams v. Shinseki*, 373 Fed. Appx. 611, 615 (7th Cir. Ill. 2010). His retaliation claim requires the same evidence, except that instead of proving membership in a protected class, he must demonstrate that he engaged in a statutorily protected activity. *Williams*, 373 Fed. Appx. At 615.

---

[1] Mr. Pandey's complaint does not specifically assert a hostile work environment claim, but rather pleads "harassment," which is not explicitly prohibited by Title VII. The Hospital defends against Mr. Pandey's allegations of harassment the context of a hostile work environment claim. [Dkt. 41-1 at 7.] Since Mr. Pandey does not dispute this analytical framework, the Court will follow it.

If the employee establishes a prima facie case, the burden shifts to the employer to present a legitimate non-discriminatory (or retaliatory) reason for the adverse employment action. *See Everroad v. Scott Truck Systems, Inc*., 604 F.3d 471, 477 (7th Cir. 2010). If the employer offers such an explanation, the burden shifts back to the employee to show that the given reason was a mere pretext for unlawful discrimination or retaliation. *See Lucas v. PyraMax Bank, FSB*, 539 F.3d 661, 666 (7th Cir. 2008).

Mr. Pandey argues that he can show a prima facie case of discrimination based on four claims—his termination, his allegedly higher workload, his alleged inability to use certain locker rooms and break rooms, and allegedly false allegations of poor work performance. The parties agree that Mr. Pandey is part of a protected class and that he engaged in a protected activity.

### 1. Was Mr. Pandey Meeting the Hospital's Legitimate Performance Expectations?

Mr. Pandey argues that he met the Hospital's legitimate performance expectations. [Dkt. 41-1 at 3.] In furtherance of that position, he claims that four testimonials from various patients, as well as an undated note he purportedly received from Sister Marlene Shapley, one of the Hospital's vice presidents, establish that his work was "exemplary." [Dkt. 41-1 at 3-4, 6.] The testimonials, however, are all undated, unsigned, unauthenticated, and lack any foundation, and the letter likewise lacks any authentication. [Dkt. 41-3.] To be admissible, documents must be authenticated and attached to an affidavit that meets the requirements of Rule 56(e). *See* Fed. R. of Evid. 901; S.D. Ind. L.R. 56.1(b); *Scott v. Edinburg,* 346 F.3d 752, 760 n. 7 (7th Cir. 2003). The documents submitted by Mr. Pandey are not admissible evidence, and the Court therefore cannot consider them.

Further, although Mr. Pandey concedes that reports were filed indicating his poor work performance, he "disputes that his work performance was poor," and further "contends that the

incident reports were the result of continuing discrimination and retaliation." [Dkt. 41-1 3.] Despite Mr. Pandey's disagreement with the criticisms he received, his own subjective assessment of his performance is not evidence that he met performance expectations or that his evaluation was untrue. *Denisi v. Dominick's Finer Foods, Inc.,* 99 F.3d 860, 865-66 (7th Cir. 1996); *Fortier v. Ameritech Mobile Communications, Inc*., 161 F.3d 1106, 1114 (7th Cir. 1998).

Based on the record evidence, the Court finds that Mr. Pandey has not submitted admissible evidence to contradict the Hospital's records demonstrating a history of performance problems, risking the health of patients and the integrity of the Hospital. Moreover, he was given ample opportunity to rectify these problems through remedial training and counseling before he was finally fired for his continued disregard for Hospital procedures. The Seventh Circuit has made clear that a pattern of performance deficiencies rebuts a claim that a plaintiff has met his employer's legitimate expectations. *Contreras v. Suncast Corp.*, 237 F.3d 756, 760-61 (7th Cir. 2001). Because Mr. Pandey showed a consistent pattern of poor performance, he cannot demonstrate that he was meeting his employer's legitimate expectations.

For these reasons, Mr. Pandey cannot make out a prima facie case for discrimination or retaliation. *See, e.g., Cerutti v. BASF Corp.*, 349 F.3d 1055, 1064 (7th Cir. 2003) ("A plaintiff does not reach the pretext stage [of *McDonnell Douglas*] . . . unless she first establishes a prima facie case of discrimination.").

### 2. Did Mr. Pandey Suffer an Adverse Employment Action?

Assuming that Mr. Pandey were meeting the Hospital's legitimate expectations, he would have to demonstrate that he suffered an adverse employment action. *See Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465-66 (7th Cir. 2002). An adverse employment action must be materially adverse to the employee. *Id.* The Seventh Circuit has described materially adverse actions to include "termination of employment, a demotion evidenced by a decrease in wage or salary, a

less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.*

The parties agree that Mr. Pandey's termination constitutes an adverse employment action. [Dkt. 36 at 15.]

Mr. Pandey further argues that he was given a higher workload than his colleagues. [Dkt. 41-1 at 6-7.] He does not provide any evidence to that effect. To the contrary, the Hospital has provided evidence to show that his workload was in fact comparable to that of his colleagues, and that it was generally even lighter. [Dkt. 43-1 at ¶¶ 3, 9-10; dkt. 37-2 at ¶ 12.] On a motion for summary judgment, the party who bears the burden of proof at trial must come forth with evidence to support each of his claims. *See* Fed. R. Civ. Pro. 56(e); *Celotex*, 477 U.S. at 317. His "subjective belief that [he] worked more than other [respiratory therapist]s is not enough to survive summary judgment. *Fane v. Locke Reynolds, LLP,* 480 F.3d 354, 359 (7th Cir. 2007). Mr. Pandey's argument that he had a heavier workload than his colleagues is an unsubstantiated, subjective allegation and therefore is not evidence of an adverse employment action.

Mr. Pandey also argues that he was not allowed to use certain locker rooms and break rooms. [Dkt. 1-1 at 3.] Indeed, the Hospital requires respiratory therapists to use the break rooms on the floors where they worked, and asks men not to enter the locker rooms when women are changing. [Dkt. 37-2 at ¶ 23; dkt 37-1 at 27-28.] The Seventh Circuit has explained that "in order to be actionable, adverse actions must be materially adverse . . . meaning more than a mere inconvenience or an alteration of job responsibilities." *de la Rama v. Illinois Dept. of Human Services*, 541 F.3d 681, 685 (7th Cir. 2008). Assuming without deciding that Mr. Pandey was excluded from certain locker rooms and break rooms, it is certainly no more than a "mere incon-

venience," and not materially adverse.  Therefore, it does not constitute an adverse employment action.  *Id.*

Finally, Mr. Pandey argues that the Hospital wrongfully gave him poor performance evaluations.  [Dkt. 41-1 at 3.]  The Seventh Circuit has held, however, that "unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions."  *Grube v. Lau Industries, Inc.*, 257 F.3d 723, 729 (7th Cir.2001).  Nor does "corrective action" rise to the level of an adverse employment action.  *Id.*  The Court will therefore only consider Mr. Pandey's poor performance evaluations in conjunction with his termination, which together constitute an adverse employment action.  *See Hilt-Dyson*, 282 F.3d 456, 465-66.

In sum, the Court finds that only Mr. Pandey's termination, coupled with his negative performance reviews (which the Court will hereinafter refer to as simply his "termination"), constitute an adverse employment action.

### 3. Were Mr. Pandey's Similarly Situated Colleagues from Outside the Protected Class Treated More Favorably than Him?

A plaintiff making a showing of discrimination or retaliation must show that similarly situated colleagues outside the protected class were treated more favorably than he was.  *See Antonetti*, 563 F.3d at 591.  To determine whether other employees are "similarly situated," the Court must "look to all relevant factors," including whether the employees "dealt with the same supervisor," were subject to "the same standards," and whether they had comparable "experience, education and qualifications."  *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 619 (7th Cir. 2000).  The similarly-situated requirement is crucial, because "without it a plaintiff would only have to point to one . . . employee who was treated better than [him] . . . (which) would be meaningless, especially with respect to large corporations . . . ."  *Radue*, 219 F.3d at 619.  Here, the

relevant comparator would be a respiratory therapist not of Indian decent, supervised by Mr. Skirvin, with a comparable disciplinary record who was not terminated. *Id.*

Here, assuming Mr. Pandey could show that he was meeting the Hospital's legitimate expectations—which he cannot—the only adverse employment action Mr. Pandey demonstrates is his allegedly wrongful termination. [Dkt. 41-1 at 4-5.] Thus, for his claim to survive, he would have to show that similarly situated employees were not terminated. *See Radue*, 219 F.3d at 619. Mr. Pandey has presented no evidence to support this claim. The only evidence that the Court can infer is at all related to this claim is his argument that "friends of management" were given a lighter workload than he was. [Dkt. 1-1 at 3.] The Seventh Circuit has been clear that a "generalized contention" that similarly-situated colleagues were treated more fairly does not show discrimination. *Tailer v. ADS, Inc.*, 327 F.3d 579, 582 (7th Cir. 2003). Without any evidence of a comparator who was not terminated after developing a similar personnel record, the Court cannot find that a similarly situated Hospital employee was treated more fairly than Mr. Pandey.

Therefore, even if he could show that he was meeting the Hospital's legitimate expectations, Mr. Pandey would still not be able to establish a prima facie case of race discrimination/retaliation based on his termination. *See Lim v. Trustees of Indiana University*, 297 F.3d 575, 581 (7th Cir. 2002) (plaintiff failed to meet the similarly situated requirement and, therefore, Seventh Circuit affirmed the district court's granting of summary judgment without reaching the issue of pretext).

### 4. Can Mr. Pandey Show that the Hospital's Legitimate Reason for Firing Him Was Pretextual?

If Mr. Pandey can establish a prima facie case, which he cannot here, the burden shifts to the employer to present a legitimate non-discriminatory reason for the adverse employment action. *See Everroad v. Scott Truck Systems, Inc.*, 604 F.3d 471, 477 (7th Cir. 2010). The Seventh

Circuit has held that poor work performance is a legitimate reason for termination. *See, e.g., Everroad v. Scott Truck Systems, Inc.*, 604 F.3d 471, 477 (7th Cir. 2010). Because the Hospital thus offers a legitimate explanation for firing Mr. Pandey, the burden shifts back to Mr. Pandey to show that the given reason was a pretext for unlawful discrimination. *See Lucas v. PyraMax Bank, FSB*, 539 F.3d 661, 666 (7th Cir. 2008).

"Pretext means more than a mistake on the part of the employer; pretext 'means a lie, specifically a phony reason for some action.'" *See Wolf v. Buss (America), Inc.*, 77 F.3d 914, 919 (7th Cir. 1996). "[T]o meet this burden [Mr. Pandey] must present evidence to suggest not that [the Hospital] was mistaken in [terminating him] but that it was lying in order to cover up the true reason, [his race and/or national origin]." *See Vanasco v. National-Louis Univ.*, 137 F.3d 962, 966 (7th Cir. 1998); *see also Little v. Illinois Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004) ("Although indirect proof of pretext is permissible, we must remember that, even if the business decision was unreasonable, pretext does not exist if the decisionmaker honestly believed the nondiscriminatory reason.") For the Court is "not a super-personnel department charged with determining best business practices, particularly when the work involves potential danger." *See Baron v. City of Highland Park*, 195 F.3d 333, 341 (7th Cir. 1999).

Here, Mr. Pandey does not offer any evidence to indicate that that the Hospital, or any decision-makers at issue, lied about his work performance as pretext for discrimination. To the contrary, he stated that he believed his supervisor was honest, [dkt. 37-1 at 11-12], and that he agreed with the Hospital's decision to give him remedial training in light of his deficiencies. [*Id.* 51-52.] Mr. Pandey simply "disputes that his work performance was poor." [Dkt. 41-1 3.] Despite Mr. Pandey's disagreement with his performance evaluation and subsequent termination, however, his own subjective assessment of his performance is not evidence that he met perfor-

mance expectations or that his evaluation was untrue. *Denisi v. Dominick's Finer Foods, Inc.,* 99 F.3d 860, 865-66 (7th Cir. 1996); *Fortier v. Ameritech Mobile Communications, Inc.*, 161 F.3d 1106, 1114 (7th Cir. 1998). It is certainly not evidence that the Hospital lied as pretext for discrimination. *Little*, 369 F.3d at 1012.

Even if Mr. Pandey could make out a prima facie claim of discrimination or retaliation, therefore, he has presented no evidence that the Hospital's legitimate reason for firing him was pretextual. His discrimination and retaliation claims therefore fail as a matter of law.

**B) Mr. Pandey's Hostile Work Environment Claim**

To prevail on a race or national origin-based hostile work environment claim, an employee must demonstrate that: (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's environment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. *See Scruggs v. Garst Seed Co*., 587 F.3d 832, 840 (7th Cir. 2009); Cooper-Schut v. Visteon Automotive Systems*, 361 F.3d 421 (7th Cir. 2004).

Mr. Pandey argues that he was subject to unwelcome harassment when his patient charting was allegedly erased, when he was allegedly followed by his co-workers, and when a derogatory note was allegedly left in his locker. [Dkt. 1-1 at 2-3.] Assuming that each foregoing allegation constitutes unwelcome harassment, Mr. Pandey next has to show that each alleged action was based on his race, severe enough to create a hostile working environment, and an action for which the Hospital could be held liable. *Scruggs*, 587 F.3d at 840.

First Mr. Pandey first argues that part of his patient charting was erased—he knew this, he claims, because he kept contemporaneous records of his patient treatments. [Dkt. 37-1 at 33.] He is unable, however, to articulate who might have been responsible for the alleged erasing, or how it might have had anything to do with his race. [*Id*. at 37.] "Mere subjective belief without

the backing of hard evidence cannot prove that an action was inspired by [discrimination]," *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 549 (7th Cir. 2002), for "if the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed." *Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 841-42 (7th Cir.1996). Because he cannot show that the alleged chart erasure was based on his race, this claim does not constitute evidence of a hostile work environment.

Additionally, Mr. Pandey claims that several of his co-workers, including an evening supervisor, harassed him by following him around. [Dkt. 37-1 at 40-41.] Mr. Pandey again, however, is unable to articulate how the alleged behavior had anything to do with his race. [*See id.* at 44.] To constitute the type of harassment necessary for a racially hostile work environment, the harassing behavior must be based on Mr. Pandey's race or national origin. *Chaney v. Plainfield Healthcare* Center, 612 F.3d 908, 912 (7th Cir. 2010). Even if Mr. Pandey were followed, with absolutely no evidence that this had to do with his race, the Court cannot find that it was evidence of race-based harassment. *SMS Demag Aktiengesellschaft*, 565 F.3d at 371. Allegedly being followed is therefore not evidence of a hostile work environment.

Finally, Mr. Pandey claims to have received a derogatory note in his locker. [Dkt. 41-1 5.] There is no dispute that the note was based on race. However, Mr. Pandey has failed to authenticate this document, or to identify who might have prepared it or put it in his locker. [Dkt. 37-1 at 64.] Moreover, Mr. Pandey does not claim to have received this letter until after his employment was terminated. [Dkt. 42 at 11 (referencing Pandey Deposition at removed 149).] Again, without any authentication, this note is inadmissible. *See* Federal Rule of Evidence 901; S.D. Ind. L.R. 56.1(b) & (e). Even if the Court could consider this note as evidence of race-

based harassment, however, racist comments by a non-decision maker do not render the employer liable. *Staub v. Proctor Hosp.* 560 F.3d 647, 656 (7th Cir. 2009). The employer is liable only for negligence: that is, only if the employer knew, or in the exercise of reasonable care should have known, about the harassment and failed to take remedial action. *See, e.g., Dennis v. Cty. of Fairfax*, 55 F.3d 151, 153 (7th Cir. 1995). Moreover, "proffered evidence of events made after . . . termination have no bearing on whether [an employer] was motivated by illegitimate reasons. *Flaten v. United Parcel Service, Inc.,* WL 2351734, *4 (7th Cir. 2009). Mr. Pandey's failure to attribute the note to a decision-maker is thus fatal to his claim that the Hospital is liable. Furthermore, since he found the note after he was already terminated, it could not possibly constitute evidence a hostile working environment. Therefore, the note Mr. Pandey allegedly found in his locker does not rise to the level of a hostile work environment for which the Hospital could be liable.

Taken together, the admissible evidence Mr. Pandey offers does not make a prima facie showing of a claim for hostile work environment and therefore cannot overcome summary judgment.

## IV.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Hospital's Motion for Summary Judgment. [Dkt. 35.] Judgment will enter accordingly.

02/03/2011

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Gregory P. Gadson

LEE COSSELL KUEHN & LOVE LLP
ggadson@nleelaw.com

Cherry Malichi
LEE COSSELL KUEHN & LOVE LLP
cmalichi@nleelaw.com

John Patrick Ryan Jr.
HALL RENDER KILLIAN HEATH & LYMAN
jryan@hallrender.com

Craig Warner Wiley
HALL RENDER KILLIAN HEATH & LYMAN
cwiley@hallrender.com